# In the United States Court of Federal Claims

|  |  |  |
|---|---|---|
| PAULA N. ALLEN et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 22-400C |
| v. | ) | (Filed: June 23, 2023) |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

William Michael Hamilton, Provost Umphrey Law Firm LLP, Nashville, TN, for plaintiffs, with whom were Guy Fisher, Provost Umphrey Law Firm LLP, Beaumont, TX, William H. Narwold and Matthew P. Jasinski, Motley Rice LLC, Hartford, CT, Bennett Allen, Cook, Allen & Logothetis LLC, Cincinnati, OH, Robert H. Stropp, Jr., Mooney, Green, Saindon, Murphy & Welch, P.C., Washington, DC, and E. Douglas Richards, Franklin, TN.

P. Davis Oliver, Department of Justice, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Washington, DC, for defendant, with whom were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Reginald T. Blades, Jr., Assistant Director.

## OPINION AND ORDER

**KAPLAN, Chief Judge.**

The plaintiffs in this putative class action are employed by the Department of Veterans Affairs ("VA") as advanced practice registered nurses ("APRNs") and physician assistants ("PAs"). They allege that the VA induced them to work overtime to update patients' electronic health records and monitor and respond to certain patient-related notifications. They further allege that—in violation of 38 U.S.C. §§ 7453(e)(1) and 7454(a)—the VA failed to provide them with overtime pay for work they were induced to perform in excess of 40 hours in an administrative workweek, or in excess of eight consecutive hours.

Currently before the Court is the government's motion for summary judgment. ECF No. 130. The government contends that the plaintiffs lack standing to pursue their claims because they do not allege that an authorized VA official expressly approved the overtime they worked  either in advance or after the fact, as required effective August 3, 2017, in accordance with revisions to VA Handbook 5007, pt. V, ch. 2, at V-3a. Plaintiffs oppose the government's motion on the grounds that its arguments go to the merits of Plaintiffs' claims and not their standing to pursue

them. Further, they contend that: (1) consistent with Federal Circuit precedent interpreting Title 38, they are entitled to be paid at overtime rates for work that they were induced to perform in excess of 40 hours in an administrative workweek, or in excess of eight consecutive hours, and that (2) the new rules in the VA Handbook cannot override the existing judicial interpretation of the statute because they lack the force and effect of law.

For the reasons set forth below, the Court agrees with the plaintiffs that the government's standing argument lacks merit. The Court agrees with the government, however, that it is entitled to judgment as a matter of law as to Plaintiffs' claims that they are entitled to overtime pay for work performed on August 3, 2017, or thereafter, where an authorized VA official did not approve in advance the performance of overtime, either verbally or in writing, or approve the overtime after the fact, as required by the applicable rules in the VA Handbook.

## BACKGROUND

### I.    Legal Landscape Before 2017 Revision of the VA Manual

This case comes to the Court in the context of a trio of precedential decisions by the Federal Circuit and its predecessor, the Court of Claims, interpreting federal employees' rights to receive overtime pay under the Federal Employee Pay Act ("FEPA"), 5 U.S.C. § 5542(a), in <u>Anderson v. United States</u>, 136 Ct. Cl. 365 (1956), and <u>Doe v. United States</u>, 372 F.3d 1347 (Fed. Cir. 2004), and under Title 38 in <u>Mercier v. United States</u>, 786 F.3d 971 (Fed. Cir. 2015) (<u>Mercier II</u>).

### A.    <u>Anderson v. United States</u>

As noted, Plaintiffs' overtime claims are based on 38 U.S.C. § 7453(e)(1), which provides VA nurses with the right to be paid at overtime rates when they perform "officially ordered or approved hours of service in excess of 40 hours in an administrative workweek, or in excess of eight consecutive hours," and under 38 U.S.C. § 7454(a) which states that "[p]hysician assistants . . . shall be entitled to additional pay on the same basis as nurses in section 7453." In <u>Anderson v. United States</u>, the Federal Circuit's predecessor, the Court of Claims, interpreted similar language in FEPA, 5 U.S.C. § 5542(a), which, in pertinent part, affords Title 5 employees overtime pay for "hours of work officially ordered or approved in excess of 40 hours in an administrative workweek." The Court of Claims held that "overtime that is 'induced' but not explicitly required, is nonetheless 'ordered or approved' under FEPA." <u>Mercier II</u>, 786 F.3d at 973 (quoting <u>Anderson</u>, 136 Ct. Cl. at 369–70).

In addition, the <u>Anderson</u> court held, a civil service regulation requiring that FEPA overtime be expressly approved in advance and in writing could not limit the scope of employees' substantive rights to overtime pay under the statute. 136 Ct. Cl. at 370–71. In the ensuing decades, therefore, FEPA overtime pay was available under the reasoning of <u>Anderson</u> where overtime was found to have been induced, even without the express written approval that the civil service regulations purported to require. <u>See, e.g.</u>, <u>Bennett v. United States</u>, 4 Cl. Ct. 330, 337 (1984); <u>McQuown v. United States</u>, 199 Ct. Cl. 858 (1972); <u>Adams v. United States</u>, 162 Ct. Cl. 766, 768–69 (1963); <u>Byrnes v. United States</u>, 330 F.2d 986, 989–90 (Ct. Cl. 1963).

**B.      Doe v. United States**

In Doe v. United States, the Federal Circuit reversed Anderson in part. 372 F.3d 1347. It concluded that Anderson's holding—that the civil service regulations requiring written advance approval impermissibly limited employees' rights to overtime pay under the statute—was no longer good law in light of intervening Supreme Court decisions. It held that "to the extent that the Anderson line of Court of Claims cases held that the Civil Service Commission was without authority to impose a 'procedural' written order requirement because it restricted the substantive scope of the overtime statute or because of equitable considerations, they are inconsistent with [Schweiker v. Hansen, 450 U.S. 785 (1981) and Office of Pers. Mgmt. v. Richmond, 496 U.S. 414 (1990)]." 372 F.3d at 1357.

The court of appeals explained that when the Office of Personnel Management ("OPM") issued 5 C.F.R. § 550.111, stating that "[o]vertime work . . . may be ordered or approved only in writing," it was acting in accordance with its statutory authority to issue regulations implementing FEPA. Id. at 1357–58 (citing 5 U.S.C. § 5548(a) (stating that "[t]he Office of Personnel Management may prescribe regulations . . . necessary for the administration of this subchapter")). The court further held that the words "ordered or approved" in the statute were "ambiguous as to whether they refer to written or oral authorization or both." Id. at 1358. Because Congress had not spoken to the "precise question at issue," the Court turned to the second analytic step prescribed in Chevron U.S.A. Inc. v. Nat. Res. Def. Council, 467 U.S. 837, 842–43 (1984), under which an agency's regulation implementing a statute "is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." Doe, 372 F.3d 1359 (quoting Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 242 (2004); United States v. Mead Corp., 533 U.S. 218, 227 (2001)).

The court of appeals in Doe agreed that it was reasonable for OPM to interpret the "officially ordered or approved" language in FEPA "to require a more formal means of authorization," such as a written directive. Id. at 1361. It further observed that "[t]he writing requirement also serves an important purpose of the statute—to control the government's liability for overtime." Id. OPM's regulation was therefore binding on the court and supplanted the inducement standard the Court of Claims had articulated in the Anderson line of cases.

**C.      Mercier II**

In 2013, a different group of APRNs and PAs brought overtime claims against the VA identical to those plaintiffs pursue here. Mercier v. United States, 114 Fed. Cl. 795 (2014) ("Mercier I"). Their claims, like those of the plaintiffs in this case, were based on the theory that they had been induced to work overtime by VA policies that required them to promptly respond to computer alerts. This Court dismissed the nurses' claims, finding that under Doe, for overtime to be officially ordered or approved, there must be an express directive to work overtime coming from a VA official, whether in writing or verbally. See id. at 805 (citing Doe, 372 F.3d at 1360).

The court of appeals reversed. It observed that Anderson's central holding—interpreting the "officially ordered or approved" language in FEPA to encompass overtime that is induced—remained good law because it had not been overruled by the Supreme Court or an en banc panel

3

of the Federal Circuit. Mercier II, 786 F.3d at 982. The Federal Circuit distinguished Doe on the grounds that, while the OPM regulations had interpreted the overtime provisions of Title 5, "no procedural regulations interpret the Title 38 overtime provisions." See id. The court of appeals therefore reversed this Court's decision and remanded the case for consideration of the plaintiffs' claims under the inducement theory articulated in the Anderson line of cases.

## II.     The 2017 Revision of the VA Manual

Unlike OPM, whose personnel regulations are binding on all agencies covered by Title 5, the VA's personnel rules apply only to its own employees and therefore need not be published for notice and comment. See 5 U.S.C. § 553(a)(2) (exempting "matter[s] relating to agency management or personnel" from notice-and-comment requirements). Nor do the VA's personnel rules appear in the Code of Federal Regulations. Instead, the VA publishes its personnel rules in its Handbook, a detailed manual that, among other things, provides "mandatory guidance and procedures for pay administration for personnel." See U.S. Dept. of Veterans' Affairs, Handbook 5007 ("VA Handbook"), pt. I, at I-1.

The pre-August 2017 edition of the Handbook, which covered the overtime worked by the plaintiffs in Mercier II, included no standards for determining whether any overtime worked was officially ordered or approved, as provided in the statute, and it prescribed no procedures by which such official orders or approval would be manifested. See Pls.' Appx. at A3–A4, ECF No. 149-1; see also Mercier II, 786 F.3d at 972 n.1 (observing that the VA Handbook "presents various policies related to overtime" but that it "fail[ed] to describe any procedure under which nurses' overtime may be explicitly ordered or approved").

In the wake of the court of appeals' 2015 decision in Mercier II, the VA initiated a process that ultimately resulted in the revision of the provisions in its Handbook that govern overtime pay entitlement for nurses and physician assistants. See Pls.' Appx. at A7 (May 18, 2015 email from attorney in VA General Counsel's office stating that in light of Mercier II decision it was "essential that VA Handbooks 5007 and 5011 be updated to clarify that RN overtime has to be ordered or approved only in writing by someone who has been officially designated with overtime approval authority," and recommending "that the policy changes be made as soon as possible to limit additional overtime liability"). The process culminated with the revisions at issue in this case, which were published in August of 2017 in VA Handbook, pt. V, ch. 2, at V-3a (2017).

As revised effective August 3, 2017, the VA Handbook now states in pertinent part that "[o]vertime resulting from either a solicitation initiated by management or at the request of the employee is considered to be voluntary overtime." Id. It further states that "[e]mployees are authorized to work voluntary overtime when the overtime has been approved either verbally or in writing, in advance, by an appropriate management official or his/her designee." Id. Additionally, the Handbook as revised provides that if an employee does not receive advance approval, they "may submit a written request for after-the-fact authorization." Id. Finally, it warns that "[e]mployees who work overtime without advance authorization are not guaranteed to ultimately receive authorization or compensation for the overtime." Id.

According to the VA's declarant, Arlene Romba, in preparing the revisions to the Handbook's provisions concerning overtime pay, VA personnel followed the agency's standard operating procedures for amending the manual. See Def.'s Appx. at A2, ECF No. 130-1 (Declaration of Arlene Romba). Under those standard procedures, revisions to policies are initiated when a subject matter expert forwards VA Form 4265, Concurrence and Summary Sheet, as well a draft of the revisions, to the relevant Service Director for review and clearance. Id. Upon approval by the Service Director, the packet is forwarded to a Senior Policy Advisor, and then routed into the computerized system through which proposed changes in personnel policy are reviewed. Id. at A3. The VA's subject-matter expert receives comments from affected VA offices, reconciles the comments, and revises the draft based on the feedback received. Id. The VA then conducts briefings as requested by unions, whose comments are considered by the VA subject matter expert. Id. The draft is finalized and routed for signatures. Id. Then the subject-matter expert prepares a publication notice for the VA's HR offices and the changes are incorporated into the electronic version of the Handbook that is maintained on the website of the VA's Office of Human Resource Management. Id.

## III.   The Present Action

### A.   Plaintiffs' Complaint

On April 7, 2022, the named plaintiffs, Paula N. Allen, Yvonne Eichler, and Shirley Saunders, VA nurse practitioners, filed this putative class action on behalf of themselves and all other similarly situated APRNs and PAs who have not received overtime pay or compensatory time off for work they performed on an overtime basis in the VA's Computerized Patient Record System. Compl. ¶ 1, ECF No. 1. Since the suit was filed, over 1,300 APRNs and PAs who allege that they performed work for the VA on an overtime basis since April 2016 (i.e. during the six years preceding the filing of this case) have filed notices to opt into the action. See id. ¶ 37; Pls.' Appx. at A1.

The plaintiffs' claims, as noted, arise out of their management of "View Alerts." These View Alerts, which are sent electronically, contain patient information, may come at any time, and, because they may deal with critical patient information, frequently require nurses to act immediately to manage their patients' care. See Compl. ¶ 19. The plaintiffs allege that they do not have sufficient time to manage these View Alerts during working hours (particularly given that they may come at any time of the day) and that their failure to timely address them "may jeopardize patient health and safety" and "result[] in intensified scrutiny, management intervention, and/or disciplinary action by VA management." Id. ¶ 29.

Plaintiffs allege that their overtime work has been "officially ordered or approved" within the meaning of 38 U.S.C. § 7453(e)(1) because they are effectively required, even if not expressly directed, to perform the work. See id. ¶¶ 50, 56 (quoting 38 U.S.C. § 7453(e)(1)). In other words, they allege that they have been induced to work overtime within the meaning of the Anderson line of cases. They do not allege that the overtime they performed was approved in advance, either verbally or in writing, as required in the revised VA Handbook. Nor do they claim that they requested approval after the fact in writing or that such approval was denied.

**B.      The Government's Motion for Summary Judgment**

On December 19, 2022, the government filed the motion for summary judgment that is currently before the Court. In it, the government contends that the plaintiffs lack standing to pursue this action for overtime pay because they do not allege that they were denied such pay for work that was expressly approved in advance, as required under the revised VA Handbook effective August 3, 2017. See Def.'s Mot. for Summ. J. [hereinafter "Def.'s Mot."] at 8–16. The plaintiffs counter that the government is conflating Plaintiffs' standing to sue with the merits of their claims. See Pls.' Resp. at 10–11, ECF No. 149.

With respect to the merits, the government contends that the new Handbook provisions have the force and effect of law and so supersede the rule established in the Anderson line of cases and in Mercier II, under which employees who are induced to work overtime are entitled to be paid at overtime rates, regardless of whether they have received express approval to do so. Plaintiffs respond that the new Handbook provisions do not have the force and effect of law. They further observe that, in a response to one of Plaintiffs' interrogatories, the government disclaimed any argument that the VA's interpretation of the statute is entitled to Chevron deference, and instead took the position that the standard for reviewing agency interpretations of a statute set forth in Skidmore v. Swift, 323 U.S. 134 (1944) (i.e., deference proportional to the agency's power to persuade) was applicable. See Pls.' Resp. at 11–18 (citing Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967 (2005)). Plaintiffs argue that the government's concession is fatal to its position that the Handbook provisions supersede the Anderson inducement rule because "[a]bsent Chevron deference, an agency's interpretation cannot override judicial precedent." Pls.' Resp. at 13 (citing Brand X, 545 U.S. at 983).

Oral argument was held on the government's motion on April 4, 2023. During oral argument, the Court pressed counsel for the government to explain its position that the overtime provisions contained in the VA Handbook carry the force and effect of law, yet are not entitled to Chevron deference. See Tr. of Proceedings at 10–11, ECF No. 166. Ultimately, counsel for the plaintiffs requested an opportunity to submit additional briefing on Chevron's applicability, which the Court granted. See id. at 41; Order, ECF No. 161.

The parties have now submitted their supplemental briefs and the case is ripe for decision. ECF Nos. 167–69.

**DISCUSSION**

**I.      Summary Judgment Standards**

Summary judgment is appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Rule 56(a) of the Rules of the Court of Federal Claims; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In ruling on a motion for summary judgment, all evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255; Adickes v. S.H.

6

Kress & Co., 398 U.S. 144, 158–59 (1970). "Once the moving party has satisfied its initial burden, the opposing party must establish a genuine issue of material fact and cannot rest on mere allegations, but must present actual evidence." Crown Operations Int'l, Ltd. v. Solutia Inc., 289 F.3d 1367, 1375 (Fed. Cir. 2002) (citing Anderson, 477 U.S. at 248).

For the purposes of this motion, the parties do not dispute the material facts, i.e., that Plaintiffs worked overtime hours after the revisions to the VA Handbook became effective and that they did not receive express verbal or written approval to do so in advance, or approval in writing after the fact. Plaintiffs argue that they were nonetheless entitled to overtime pay for overtime work they were induced to perform. The government argues that, even if the plaintiffs were induced to work overtime, the VA Handbook controls and precludes the plaintiffs from succeeding in their claims. Because the Court need only resolve a question of law—the effect of the revisions to the VA Handbook on Plaintiffs' entitlement to overtime pay—the case is appropriate for resolution by summary judgment. See Lanehart v. Horner, 818 F.2d 1574, 1577 (Fed. Cir. 1987).

## II.    Standing

The government predicates its motion for summary judgment on Plaintiffs' alleged lack of standing to pursue their overtime claims. The government's standing argument is misconceived.

The Court of Federal Claims is an Article I court. Nonetheless, it "applies the same standing requirements enforced by other federal courts created under Article III." Anderson v. United States, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003). Therefore, to establish standing to sue here, a plaintiff must allege that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Friends of the Earth, Inc. v. Laidlaw Env't Servs., 528 U.S. 167, 180–81 (2000)); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (quotations omitted).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560). The government argues that the plaintiffs have not alleged an invasion of a legally protected interest because they do not allege that they secured express advanced (or after-the-fact) approval to work overtime as required by the VA's revised Handbook. The government defines the "legally protected interest" at stake as the "right to overtime compensation for overtime work that was approved either verbally or in writing by the appropriate management official in accordance with the 2017 VA Handbook." See Def.'s Mot. at 8.

But the government mischaracterizes the interest Plaintiffs seek to vindicate in this case. Plaintiffs' allegation is that they have a legally protected interest in receiving overtime compensation where they are induced to perform their work on an overtime basis, irrespective of whether the overtime work is expressly approved in advance (or after-the-fact) as the Handbook now requires. The failure to provide them with pay for the overtime work they were induced to perform, they allege, is an injury-in-fact that is directly traceable to the VA's decisions. Further,

that injury would be redressable by a decision on the merits by this Court that their overtime work was officially ordered and approved within the meaning of the statute notwithstanding that the Handbook's procedural requirements were not met.

The government, in short, challenges the plaintiffs' standing on the basis of its own position on the merits that Plaintiffs are not entitled to receive overtime pay for work that is not expressly ordered or approved in accordance with the Handbook. This approach collides with the well-established principle that "[s]tanding is a threshold inquiry that in no way depends on the merits of the case." Reoforce, Inc. v. United States, 853 F.3d 1249, 1264 (Fed. Cir. 2017) (internal citation and quotations omitted). The standing analysis "assumes the merits of a litigant's claim and determines whether 'even though the claim may be correct the litigant advancing it is not properly situated to be entitled to its judicial determination.'" Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (quoting 13A Fed. Practice & Proc. § 3531 (3d ed. 2008 & Supp. 2016)); see also East Bay Sanctuary Covenant v. Trump, 950 F.3d 1242, 1267–68 (9th Cir. 2020), aff'd and amended en banc, 993 F.3d 640 (9th Cir. 2021) ("Whether the Organizations have a sufficient statutory or otherwise legal basis for their claims is irrelevant at this threshold stage."); In re Special Grand Jury 89-2, 450 F.3d 1159, 1172 (10th Cir. 2006) ("The term legally protected interest has generated some confusion because the Court has made clear that a plaintiff can have standing despite losing on the merits—that is, even though the interest would not be protected by the law in that case. . . . [I]t may be abundantly clear that the interest is indeed not protected by any law, but . . . that lack of protection goes to the merits, not standing.").

The Court therefore rejects the government's argument that it is entitled to summary judgment because the plaintiffs lack standing to pursue their claims. It turns now to what it understands to be the gravamen of the government's motion: that—as to overtime worked beginning August 3, 2017—the VA Handbook's new procedural requirements preclude Plaintiffs from relying on the "inducement" theory of overtime pay entitlement articulated in Anderson and endorsed for Title 38 overtime claims in Mercier II.

## III.   Merits

As discussed above, in Doe, the court of appeals held that the OPM regulation requiring that overtime work be approved in advance in writing had the force and effect of law, and that because the regulation was neither "procedurally defective, arbitrary and capricious in substance, or manifestly contrary to the statute," the written approval requirement was "binding in the courts." 372 F.3d at 1359. For the reasons set forth below, the same result follows here with respect to the requirements set forth in the revised VA Handbook.

### A.   The New Rules Have the Force and Effect of Law

First, like the OPM regulation in Doe, the provisions in the revised VA Handbook that require advance verbal or written authorization of overtime work under Title 38 have the force and effect of law. The Court so concludes because: (1) the VA was vested with the statutory authority to prescribe by regulation the hours and conditions of employment of PAs and APRNs; (2) the VA conformed to all procedural requirements in promulgating the rules; (3) the VA intended to establish a binding rule; and (4) the provisions requiring express advanced approval of overtime

work do not contravene any statute. See Hamlet v. United States, 63 F.3d 1097, 1105 (Fed. Cir. 1995) (articulating the four-part test for determining whether provisions in an agency personnel handbook have the force and effect of law).

### 1.     The new rules were prescribed pursuant to a congressional delegation of authority to promulgate regulations

The VA promulgated the revised Handbook provisions pursuant to several congressional delegations of rulemaking authority. First, section 7421(a) of Title 38 states that "[n]otwithstanding any law, Executive order, or regulation, the Secretary shall prescribe by regulation the hours and conditions of employment and leaves of absence of employees appointed under any provision of this title in positions in the Veterans Health Administration listed in subsection (b)." The authority to prescribe employees' "hours," by definition, encompasses regulations prescribing the manner in which the VA officially orders employees to work more than 40 hours in an administrative workweek or more than eight hours consecutively. Further, the authority to prescribe "conditions of employment" for VA employees under section 7421(a) covers "matters such as work assignments and scheduling." James v. Von Zemenszky, 284 F.3d at 1310, 1317 (Fed. Cir. 2002) ("Von Zemenszky I"). A rule that requires employees to secure advance verbal or written permission to work overtime as a condition of being compensated for such work addresses the topic of work assignments and scheduling, and therefore prescribes conditions of employment.

Indeed, the VA invoked its statutory authority to prescribe rules governing hours and conditions of employment expressly in Handbook 5007. It states that "the policies on pay administration in this handbook pertaining to title 38 employees . . . are authorizing regulations prescribed pursuant to the Secretary's authority under 38 U.S.C. 7421(a) and the Under Secretary for Health's authority under 38 U.S.C. 7304." The agency's invocation of its general legislative authority indicates that a rule has the force and effect of law. Am. Min. Cong. v. Mine Safety & Health Admin., 995 F.2d 1106, 1112 (D.C. Cir. 1993).

In addition, 38 U.S.C. § 7454—the source of PAs' substantive entitlement to overtime pay—states that "[t]he Secretary shall prescribe by regulation standards for compensation and payment under this section." 38 U.S.C. § 7454(c) It could not be clearer that—as to PAs—this provision gives the Secretary the authority to promulgate the revised Handbook provisions which establish the prerequisites to the receipt of overtime compensation. See Carson v. United States, 161 Fed. Cl. 696, 707–08 (2022) (finding that 38 U.S.C. § 7454(c) vested the VA Secretary with authority to promulgate regulations regarding employees' entitlement to weekend pay and that he had exercised that authority through handbooks and other agency issuances governing employee pay and benefits). And it would make no sense for the Secretary to be able to "prescribe standards for compensation and payment" for physicians assistants under 38 U.S.C. § 7454 but not for nurses covered by 38 U.S.C. 7453, when § 7454(a) states that "[p]hysician assistants . . . shall be entitled to additional pay on the same basis as provided for nurses in section 7453 of this title."

### 2.     Procedural requirements for promulgating the rules were satisfied

Turning to the second Hamlet criterion for determining whether a handbook provision has the force and effect of law, it is undisputed that the VA complied with relevant procedural

requirements in exercising its statutory authority to issue rules concerning hours and conditions of employment. The revised rules on overtime entitlement were exempt from the APA's notice and comment procedures. See 5 U.S.C. § 553(a)(2) (exempting "matter[s] relating to agency management or personnel" from notice-and-comment requirements). Instead, they were drafted and finalized in accordance with the VA's own internal clearance process which, as described above, included review by subject-matter experts and an opportunity for comment by affected parties, including the employees' collective bargaining representatives.

### 3.      The agency intended to impose binding requirements

Third, there are a number of indicia of agency intent that the revised rules governing approval of overtime work would be binding. The Handbook section on "Additional Pay" begins by stating that its purpose is to "provid[e] Department of Veterans Affairs mandatory guidance and procedures for determining additional and premium rates of pay, e.g., overtime pay, for personnel appointed or designated under certain title 38 authorities." VA Handbook 5007, pt. 5 ch. 1, at V-1 (emphasis supplied). The introductory section of the Handbook itself further states that the policies it promulgates "under the authority of 38 U.S.C. are regulatory with no deviations, not expressly authorized herein, to be indulged." Id. pt. I, at I-1

The specific provisions at issue employ mandatory language. They state that employees are authorized to work overtime "when the overtime has been approved either verbally or in writing, in advance, by an appropriate management official or his/her designee." Id. pt. V. ch. 2, at V-3a. They further provide that if an employee has not requested authorization for overtime in advance, then the employee may request approval after the fact, but that "employees who work overtime without advanced authorization are not guaranteed to ultimately receive authorization or compensation for the overtime." Id.

Another indication that the rules have the force and effect of law is their substantive nature. The rule the VA promulgated in its revised Handbook established new criteria that define the manner in which overtime is officially ordered and approved and therefore gives rise to an entitlement to overtime pay. As the Hamlet court explained, "[i]n this analysis, 'substantive' includes procedural requisites in manuals or handbooks . . ." Hamlet, 63 F.3d at 1005 n.6. The VA rule is a substantive rather than interpretive one because it did more than clarify existing rights or obligations; it imposed new limitations on overtime pay entitlement by conditioning such entitlement on an authorized VA official having either expressly approved the performance of overtime work in advance or granted an employee's written request for such approval after-the-fact. See Perez v. Mortg. Bankers Ass'n, 575 U.S. 92, 97 (2015) (observing that interpretive rules, in contrast to substantive ones, merely clarify existing obligations imposed by statute); Mendoza v. Perez, 754 F.3d 1002, 1021 (D.C. Cir. 2014) (Interpretive rules "clarify a statutory or regulatory term, remind parties of existing statutory or regulatory duties, or 'merely track[]' preexisting requirements and explain something the statute or regulation already required." (quoting Nat'l Fam. Planning & Reprod. Health Ass'n, Inc. v. Sullivan, 979 F.2d 227, 236–37 (D.C. Cir. 1992))).

The context in which the rule was promulgated also clearly reflects an intent on the VA's part that it be binding. The VA Handbook was revised in direct response to the Mercier II ruling that the inducement to work standard that was applied to FEPA under Anderson also applies to

Title 38. Indeed, additions to the existing handbook were first suggested within days after the court of appeals issued its decision. See Pls.' Appx. at A7 (email from Gia Chemsian, VA attorney); Def.'s Appx. at A2. Considering the fact that the VA acted in direct response to Mercier II, and that the VA used mandatory language in the Handbook, it is clear that the VA intended the rule to have binding effect.

### 4.      The rules are consistent with the statute

Finally, as to Hamlet's factor four, the new rule does not contravene any statute. The Court's analysis is guided by the two-step analytic process the Supreme Court established in Chevron. Under that decision, the Court must first ask "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. If so, then the Court "must give effect to the unambiguously expressed intent of Congress." Id. at 843. If, on the other hand, the statute is ambiguous, the Court proceeds to Chevron step two, asking "whether the agency responsible for filling a gap in the statute has rendered an interpretation that 'is based on a permissible construction of the statute.'" Doe, 372 F.3d at 1358 (quoting Koyo Seiko Co. v United States, 258 F.3d 1340, 1346 (Fed Cir. 2001)).

Here, Congress has not directly spoken as to the manner in which the VA must bestow its official approval of work an employee performs in excess of forty hours in a week, or for more than eight consecutive hours. To the contrary, the relevant statutory language—requiring that overtime be "officially ordered or approved"—is, as the Doe court recognized, ambiguous. See Doe, 372 F.3d at 1359 ("[T]he statutory terms 'order' and 'approve' are broad enough to encompass either written or oral communications (or both).").

The regulation resolves the ambiguity by specifying that overtime is "officially ordered or approved": (1) where an authorized management official directs or approves its performance in advance either verbally or in writing, or (2) where an employee requests such approval in writing after the fact, and such approval is granted. And by requiring express advanced approval, the VA disclaims any intent to officially order or approve overtime work by implication through inducement to work such overtime arising out of the demands of an employee's work. In fact, as noted, it expressly states that "[e]mployees who work overtime without advance authorization are not guaranteed to ultimately receive authorization or compensation for the overtime."

### B.      The New Rules are Binding on this Court

Plaintiffs contend that even if the VA's new rules have the force and effect of law, the interpretation of the statutory language they impose does not merit deference under Chevron. And because Chevron deference does not apply, they argue, the Federal Circuit's prior construction of the statute in Mercier II is controlling and the VA lacks the authority to implement a contrary rule. See Brand X, 545 U.S. at 982 (holding that a prior judicial interpretation of an ambiguous statute may be superseded by a contrary interpretation that is otherwise entitled to Chevron deference).

Plaintiffs' argument lacks merit. By definition, Chevron deference is applied whenever an agency has been delegated the authority to issue rules with the force and effect of law and it exercises that authority to interpret ambiguous statutory language. See Mead, 533 U.S. at 226–27

11

(An "administrative implementation of a particular statutory provision qualifies for <u>Chevron</u> deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."); <u>see also</u> <u>City of Arlington v. F.C.C.</u>, 569 U.S. 290, 308 (2013) (Breyer, J., concurring) (noting that <u>Chevron</u> deference applies to "interpretations or rules that carry with them 'the force of law'") (quoting <u>Mead</u>, 533 U.S. at 229)); <u>Aqua Products, Inc. v. Matal</u>, 872 F.3d 1290, 1316 (Fed. Cir. 2017) (stating that <u>Chevron</u> deference applies where the agency has the authority to promulgate the rule at issue and adopted it through APA-compliant procedures that have the force and effect of law).

Plaintiffs further argue that the new VA rules are not entitled to <u>Chevron</u> deference because they are "not the product of any reasoned or longstanding interpretation—gap-filling or otherwise," but instead "simply reflect[] the VA's litigation position" and what Plaintiffs call a "bald-faced attempt to limit its exposure under [<u>Mercier II</u>]." Pls.' Supp. Br. at 7–8, ECF No. 168. These arguments lack merit.

To begin with, it is not fair to say that the new rules are not the product of any longstanding interpretation of the statute. In fact, until <u>Mercier II</u>, the VA had taken the position that APRNs and PAs were not entitled to receive overtime pay based on an inducement theory. While the VA erroneously believed that it was not required to formalize that interpretation through a regulation with the force and effect of law, it did so soon after the <u>Mercier II</u> decision. The regulation may have been drafted relatively recently, but the VA's interpretation is longstanding and consistent.

Further, it is irrelevant that one purpose (and perhaps the primary purpose) of the new VA rules was to limit the government's potential liability for overtime pay in the wake of the endorsement of the inducement standard in <u>Mercier II</u>. There is nothing improper about the VA attempting to control its exposure to liability for overtime pay by issuing regulations that interpret the ambiguous statutory phrase "officially ordered or approved" to require express advanced or after-the-fact approval by an authorized official. Indeed, <u>Doe</u> found the writing requirement in OPM's regulation implementing FEPA reasonable in part because it "also serve[d] an important purpose of [FEPA]—to control the government's liability for overtime." 372 F.3d at 1361.

Plaintiffs also rely on footnote 1 in the <u>Mercier II</u> decision to support their argument that the revised rules do not merit <u>Chevron</u> deference. <u>See</u> 786 F.3d at 972 n.1. In the text accompanying that footnote, the Court described the question before it as how to interpret the words "officially ordered or approved" in 38 U.S.C. § 7453(e)(1), given that "[t]he statute does not require the official order or approval to be in any particular form." <u>Mercier II</u>, 786 F.3d at 972. As the court further noted, the agency, for its part, "has not enacted any regulation interpreting the statute as mandating any particular procedure that must be followed to qualify for overtime pay." <u>Id.</u> Instead, the court of appeals observed in the footnote, the VA Handbook merely "presents various policies related to overtime, including, for example, that overtime is to be used only when necessary." <u>Id.</u> at 972 n.1. It opined that the Handbook was "an informal agency interpretation," which was "entitled to deference only 'proportional to [its] power to persuade.'" <u>Id.</u> (quoting <u>Von Zemenszky I</u>, 284 F.3d at 1319).

Plaintiffs' reliance on this footnote for the proposition that the new Handbook provisions do not have the force and effect of law or are not entitled to Chevron deference is unavailing. The provisions that are at issue here did not exist at the time Mercier II was decided. Their absence is what drove the court of appeals to apply the pre-existing judicial precedent. And, as the Federal Circuit had already acknowledged in Hamlet, years before, courts (including the Supreme Court) "have held that an agency manual or handbook can be a binding agency regulation." 63 F.3d at 1103–04 (citing Thorpe v. Hous. Auth. of Durham, 339 U.S. 268, 274–76 (1969); Vitarelli v. Seaton, 359 U.S. 535, 538–40 (1959); Service v. Dulles, 354 U.S. 363, 374–76 (1957)). The Court therefore does not read that footnote as constituting a holding that none of the provisions in the VA Handbook, past or present, could have the force and effect of law and therefore be entitled to Chevron deference.

To be sure, the court of appeals has several times held that particular provisions in agency handbooks governing personnel matters are not entitled to Chevron deference. See, e.g., James v. Von Zemenszky, 301 F.3d 1364, 1365 (Fed. Cir. 2002) ("Von Zemenszky II"); Butterbaugh v. Dep't of Just., 336 F.3d 1332, 1340–41 (Fed. Cir. 2003). But the particular holdings in those cases have been in the context of handbook provisions that—unlike those at issue here—did not have the force and effect of law because Congress had not delegated rulemaking authority to the agencies with respect to those provisions.

In Von Zemenszky, for example, the issue was whether Title 38 physicians enjoyed the same procedural protections as Title 5 employees in the context of an agency reduction in force ("RIF"), or whether they were instead subject to the procedures governing "staff adjustments" set forth in the VA Handbook. The VA purported to have issued the Handbook provisions pursuant to its authority to "prescribe by regulation the . . . conditions of employment . . . of employees." 38 U.S.C. § 7421(a). But the court of appeals concluded that "conditions of employment" did not include RIF procedures and so the VA did not have statutory authority to promulgate the rules at issue. Von Zemenszky I, 284 F.3d at 1317. Further, because the statute was unambiguous in that regard, the court of appeals stated on panel rehearing that it "did not (and do not) find it necessary to address in great detail the factors bearing on the availability of Chevron deference in cases in which the statute in question is ambiguous." Von Zemenszky II, 301 F.3d at 1366.

Similarly, in Butterbaugh, the Federal Circuit found that an agency interpretation of 5 U.S.C. § 6323(a)(1) contained in its "Time and Attendance Reporting Handbook" lacked the force and effect of law. The agency not only did not promulgate the rule through notice-and-comment procedures, but also lacked statutory authority to promulgate any rules at all with respect to the provision at issue. See Butterbaugh, 336 F.3d at 1340–41 (noting that although "the absence of notice-and-comment rulemaking does not conclusively foreclose Chevron deference," there was no reason to afford it there, where the agency had no rulemaking authority).

Finally, Plaintiffs emphasize that until the government filed its supplemental brief, it took the position that the new rules are not entitled to Chevron deference, but only to the "respect" afforded agency interpretations of statutes under Skidmore v. Swift & Co., 323 U.S. 134 (1944). They argue that the government has waived reliance on Chevron deference by disavowing it until the Court suggested, at oral argument, that if Chevron deference does not apply, then it would be

bound to follow the existing interpretation of the "officially ordered or approved" language that the court of appeals endorsed in Mercier II.

In its supplemental brief, the government has now taken the position that the new provisions in the VA Handbook are entitled to Chevron deference, and they have amended their interrogatory answer accordingly. But in any event, the government's earlier position does not bind this Court, as Chevron's applicability involves a question of law that the Court must necessarily address to determine whether it remains bound to apply the inducement standard as required by Mercier II. Moreover, the government has consistently argued that the new Handbook provisions were promulgated pursuant to statutory authority and have the force and effect of law. If so, then it necessarily follows that the VA's interpretation of the ambiguous statutory language is entitled to Chevron deference. The Court, therefore, rejects Plaintiffs' argument that it cannot apply Chevron deference because the government (erroneously) disavowed its applicability.

In short, the Court concludes that the new Handbook provisions specifying the manner in which overtime is "officially ordered or approved" have the force and effect of law. The Court further finds that the statutory language they interpret is ambiguous and that the VA's interpretation of the statutory phrase "officially ordered or approved" is entitled to deference under Chevron. Because the VA's interpretation of the ambiguous language is reasonable, it supersedes the court of appeals' ruling in Mercier II that overtime is officially ordered or approved where it is induced, even in the absence of express advance authorization, whether written or verbal. See Brand X, 545 U.S. at 982; see also Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 158 (2013); In re Lovin, 652 F.3d 1349, 1356 (Fed. Cir. 2011).[1]

## CONCLUSION

Based on the foregoing, the government's motion for summary judgment, ECF No. 130, is **GRANTED** for claims based on overtime performed on or after August 3, 2017, and **DENIED** for claims based on overtime performed prior to that date.

The parties shall file a joint status report within 30 days of the date of this opinion. In that status report, the parties shall identify the named and opt-in plaintiffs whose overtime claims are based entirely on work performed on or after August 3, 2017. The parties shall advise the Court whether they would prefer that it enter immediate judgment as to some or all of those individuals' claims (allowing an immediate appeal) or whether they would propose some other option for moving forward with this case as to all plaintiffs.

---

[1] The Court notes that in their supplemental brief, the plaintiffs argue that "[i]f Chevron compels deference in this case, then it should be overruled." Pls.' Supp. Br. at 11. But as the plaintiffs recognize, the fate of Chevron is within the Supreme Court's purview, not this Court's. Chevron remains good law and, in the Court's view, mandates that it must apply the VA's new handbook provisions to determine the plaintiffs' entitlement to overtime pay, rather than the inducement standard the court of appeals found controlling in Mercier II.

**IT IS SO ORDERED.**

s/Elaine D. Kaplan
ELAINE D. KAPLAN
Chief Judge