# In the United States Court of Federal Claims

|  |  |
|---|---|
| PAULA N. ALLEN et al., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| v. | )     No. 22-400 |
| | )     (Filed: June 1, 2026) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

William Michael Hamilton, Provost Umphrey Law Firm LLP, Nashville, TN, with whom were E. Douglas Richards, Lexington, KY, Guy Fisher, Provost Umphrey Law Firm LLP, Beaumont, TX, Robert H. Stropp, Jr., Mooney, Green, Saindon, Murphy & Welch, P.C., Washington, DC, William H. Narwold and Matthew P. Jasinski, Motley Rice LLC, Hartford, CT, and Bennett Allen, Cook, Allen & Logothetis LLC, Cincinnati, OH, for Plaintiffs.

David M. Kerr, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were Reginald T. Blades, Jr., Assistant Director, Patricia M. McCarthy, Director, and Brett A. Shumate, Assistant Attorney General, for Defendant. Robert C. Burlison III, Senior Trial Attorney, Personnel Law Group, Office of General Counsel, U.S. Department of Veterans Affairs, Washington, DC, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

This putative class action is before the Court on remand from the United States Court of Appeals for the Federal Circuit. See Allen v. United States (Allen II), No. 2024-1117, 2024 WL 4002305 (Fed. Cir. Aug. 30, 2024). The named plaintiffs are advanced practice registered nurses ("APRNs") and physician assistants ("PAs") employed by the Department of Veterans Affairs ("VA"). Their duties require them to monitor and promptly respond to certain time-sensitive patient-related notifications referred to as "View Alerts." They contend that while the VA did not expressly direct them to perform overtime work, it induced them to perform these duties on an overtime basis but then failed to pay for their work at overtime rates.

According to Plaintiffs, by failing to pay them at overtime rates for the work they were induced—but not expressly directed—to perform, the VA violated 38 U.S.C. §§ 7453(e)(1) and 7454(a). The former provision states that "[a] nurse performing officially ordered or approved hours of service in excess of 40 hours in an administrative workweek, or in excess of eight consecutive hours, shall receive overtime pay for each hour of such additional service." 38 U.S.C. § 7453(e)(1). And the latter provides that "[p]hysician assistants . . . shall be entitled to additional pay on the same basis as provided for nurses in section 7453 of this title." Id. § 7454(a).

The government challenges Plaintiffs' interpretation of the phrase "officially ordered or approved." It contends that the overtime Plaintiffs allege they were induced to perform was not "officially ordered or approved" because no authorized VA official expressly ordered or approved the overtime in the manner prescribed by VA. Under the VA's rule, officially ordered or approved overtime must be expressly approved in advance either verbally or in writing or authorized after the fact by written request. U.S. Dep't of Veterans Affs., Handbook 5007: Pay Administration at V-3a (2021) [hereinafter Handbook].[1]

Based on the Federal Circuit's recent en banc decision in Lesko v. United States, 161 F.4th 1352 (Fed. Cir. 2025), and for the reasons set forth below, the Court agrees with the government that Plaintiffs are not entitled to overtime pay for overtime work performed on or after August 3, 2017 that was induced but not expressly directed or approved by an authorized VA official in the manner prescribed by the Handbook. The government's Renewed Motion for Summary Judgment, ECF No. 194, is therefore **GRANTED**.

## BACKGROUND

The history of this case, including the bases for Plaintiffs' overtime claims, are described in some detail in the Court's prior decisions. See Allen v. United States (Allen I), 166 Fed. Cl. 485, 488–92 (2023), vacated, No. 2024-1117, 2024 WL 4002305 (Fed. Cir. Aug. 30, 2024); Opinion and Order, at 2–3, ECF No. 188 (granting the parties' joint motion to certify a class of APRNs and PAs who worked overtime between April 7, 2016 and August 3, 2017). The Court will not repeat its discussion of that background here except when relevant to its ruling on the government's present Renewed Motion for Summary Judgment.

## I.    The Government's Initial Motion for Summary Judgment

On December 19, 2022, the government filed its initial Motion for Summary Judgment. ECF No. 130. In that Motion, the government argued that Plaintiffs were not entitled to be paid at overtime rates because an authorized VA official did not order or approve the overtime they performed on or after August 3, 2017 in accordance with the Handbook and therefore lacked standing under Article III to bring their claims. Allen I, 166 Fed. Cl. at 488.

On June 23, 2023, the Court granted-in-part and denied-in-part the government's Motion. It rejected the government's argument that Plaintiffs lacked standing to pursue their claims but found the government was "entitled to judgment as a matter of law as to Plaintiffs' claims that they are entitled to overtime pay for work performed on August 3, 2017, or thereafter, where an

---

[1] The Handbook contains "mandatory guidance and procedures for pay administration for personnel." See Handbook at I-1. Until August 3, 2017, the Handbook did not specify a process for authorizing overtime. As revised, however, it now states that "[e]mployees are authorized to work voluntary overtime when the overtime has been approved either verbally or in writing, in advance, by an appropriate management official or his/her designee." Id. at V-3a. Additionally, the Handbook provides that if an employee does not receive advance verbal or written approval, they "may submit a written request for after-the-fact authorization." Id. "In such cases, the decision to authorize the overtime is at the discretion of management." Id. Therefore, "[e]mployees who work overtime without advance authorization are not guaranteed to ultimately receive authorization or compensation for the overtime." Id.

authorized VA official did not approve in advance the performance of overtime, either verbally or in writing, or approve the overtime after the fact, as required by the applicable rules in the VA Handbook." Id.

The Court's decision rested in part on the application of the two-step method of statutory interpretation set forth in Chevron U.S.A. Inc. v. Nat. Res. Def. Council, 467 U.S. 837, 842–43 (1984). Under the first step of that analysis, a court was required to determine "whether Congress ha[d] directly spoken to the precise question at issue." Id. at 842. "If the intent of Congress [was] clear, that [was] the end of the matter . . . ." Id. If, on the other hand, "the statute [was] silent or ambiguous with respect to the specific issue" before it, the reviewing court could not "simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." Id. at 843. Instead, under Chevron step 2, courts were to defer to the agency if it had offered "a permissible construction of the statute," id., even if it was not "the reading the court would have reached if the question initially had arisen in a judicial proceeding," id. at 843 n.11.

In its previous Opinion, this Court held that the language of 38 U.S.C. § 7453(e)(1) was ambiguous with respect to the circumstances under which overtime work is considered "officially ordered or approved." Allen I, 166 Fed. Cl. at 496. It observed that the VA had promulgated the provisions in its Handbook governing entitlement to overtime pursuant to congressional delegations of authority in 38 U.S.C. §§ 7421 and 7454. Id. at 494. Therefore, the Court held, Chevron required that the Court defer to the interpretation of the statute reflected in the Handbook provisions, which represented a permissible interpretation of ambiguous statutory language requiring that overtime be "officially ordered or approved." Id. at 498.

Moreover, the Court reasoned, "[b]ecause the VA's interpretation of the ambiguous language is reasonable, it supersedes the court of appeals' ruling in [Mercier v. United States, 786 F.3d 971 (Fed. Cir. 2015)] that overtime is officially ordered or approved where it is induced, even in the absence of express advance authorization, whether written or verbal." Allen I, 166 Fed. Cl. at 498 (first citing Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982 (2005); then citing Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 158 (2013); and then citing In re Lovin, 652 F.3d 1349, 1356 (Fed. Cir. 2011)).[2]

## II.    The Federal Circuit's Remand

On August 18, 2023, judgment was entered in accordance with RCFC 54(a) against the named and opt-in plaintiffs whose overtime claims were based entirely on work performed on or

---

[2] In Mercier, a different group of APRNs and PAs brought overtime claims against the VA identical to those Plaintiffs pursue here. This Court dismissed the claims on the government's motion, holding that the overtime they worked was not "officially ordered or approved" because the VA did not expressly authorize or approve any overtime work. The Federal Circuit then reversed this Court's decision, based on the decision of the Court of Claims (the Federal Circuit's predecessor) in Anderson v. United States, 136 Ct. Cl. 365, 370 (1956), which interpreted the phrase "officially ordered or approved" to encompass overtime that is induced, even if not expressly approved, and found invalid a civil service regulation that required written approval of overtime work. Mercier, 786 F.3d at 982.

after August 3, 2017. ECF No. 175. On October 16, 2023, Plaintiffs noticed an appeal of the Court's entry of judgment in favor of the government. ECF No. 180.

On June 28, 2024, while Plaintiffs' appeal was pending, the Supreme Court issued its decision in <u>Loper Bright Enterprises v. Raimondo</u>, 603 U.S. 369 (2024). In that decision, the Supreme Court overruled <u>Chevron</u>'s holding that where statutory language is ambiguous, a court should defer to an agency's interpretation so long as it is a reasonable one. <u>Loper Bright</u>, 603 U.S. at 412. <u>Loper Bright</u> held that courts are required to "exercise their independent judgment in deciding whether an agency has acted within its statutory authority" and that they "may not defer to an agency interpretation of the law simply because a statute is ambiguous." <u>Id.</u> at 412–13.

At the same time, <u>Loper Bright</u> recognized that—where Congress so intends—agencies may still play an important role in giving meaning to ambiguous statutory provisions. It observed that "[i]n a case involving an agency . . . the statute's meaning may well be that the agency is authorized to exercise a degree of discretion." <u>Id.</u> at 394. "For example, some statutes 'expressly delegate[]' to an agency the authority to give meaning to a particular statutory term." <u>Id.</u> (alternations in original) (quoting <u>Batterton v. Francis</u>, 432 U.S. 416, 425 (1977)). "Others empower an agency to prescribe rules to 'fill up the details' of a statutory scheme." <u>Id.</u> at 395 (quoting <u>Wayman v. Southard</u>, 23 U.S. (10 Wheat.) 1, 43, 6 (1825)). And in some instances, statutes delegate authority "to regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,' such as 'appropriate' or reasonable.'" <u>Id.</u> (quoting <u>Michigan v. EPA</u>, 576 U.S. 743, 752 (2015)).

Given that this Court had predicated its decision granting summary judgment in part on the analysis employed in the now-overruled <u>Chevron</u> decision, the court of appeals vacated this Court's judgment and remanded the case for further consideration in light of <u>Loper Bright</u>. <u>Allen II</u>, 2024 WL 4002305, at *1.

### III.    Stay Pending the En Banc Federal Circuit's Decision in <u>Lesko</u>

The government filed the Renewed Motion for Summary Judgment currently before the Court on November 13, 2024. Renewed Mot. for Summ. J., ECF No. 194. Meanwhile, on October 9, 2024, a Federal Circuit panel held oral argument in <u>Lesko v. United States</u>, 130 F.4th 1385, 1385 (Fed. Cir. 2025). That case involved the proper interpretation of the overtime provision of the Federal Employee Pay Act ("FEPA"), 5 U.S.C. § 5542(a).

On March 18, 2025, the Federal Circuit sua sponte referred <u>Lesko</u> for review en banc to consider how the "officially ordered or approved" language contained in FEPA should be interpreted in light of <u>Loper Bright</u>. <u>Id.</u> Given that FEPA and 38 U.S.C. § 7453(e)(1) employ the same "officially ordered or approved" language in defining entitlement to overtime pay, this Court stayed further proceedings on the government's Renewed Motion for Summary Judgment during the pendency of the <u>Lesko</u> appeal. March 28, 2025 Order, ECF No. 205.

On December 12, 2025, the Federal Circuit issued its opinion in <u>Lesko</u>. Shortly thereafter, this Court ordered that the parties file supplemental briefs addressing the application of the en banc decision to the issues presented in this case. The parties submitted their briefs on February 6, 2026. Suppl. Br. in Supp. of Pls.' Opp'n to Def.'s Renewed Mot. for Summ. J. [hereinafter Pls.' Suppl. Br.], ECF No. 208; Def.'s Suppl. Br. in Supp. of its Renewed Mot. for Summ. J. [hereinafter Def.'s Suppl. Br.], ECF No. 209. The Court held oral argument on the Renewed Motion for Summary Judgment on May 12, 2026.

4

**DISCUSSION**

The material facts in this case are not in dispute. The overtime work Plaintiffs allege they were induced to perform was not authorized or approved in accordance with the requirements of the revised Handbook—i.e., the overtime was neither approved in advance by an authorized official either verbally or in writing nor approved after the work was performed at the written request of a plaintiff.

The issue before the Court on the government's Renewed Motion for Summary Judgment is a purely legal one: whether—despite the fact that Plaintiffs' overtime work was not authorized in accordance with the Handbook—it was nonetheless "officially ordered or approved" within the meaning of 38 U.S.C. § 7453(e)(1). The resolution of that question of statutory interpretation is controlled by the Federal Circuit's recent en banc decision in Lesko.

The named plaintiff in Lesko was formerly employed by the Indian Health Service as a nurse. 161 F.4th at 1357. She alleged that the government violated FEPA when it failed to pay registered nurses for overtime it induced them to perform during the COVID-19 pandemic. Id. Like 38 U.S.C. § 7453(e)(1), that provision hinges entitlement to overtime pay on the overtime work having been "officially ordered or approved." See 5 U.S.C. § 5542(a) (stating that "[f]or full-time, part-time and intermittent tours of duty, hours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or . . . in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for" at the statute's specified rates (emphasis added)).

The Federal Circuit held that the plaintiff's interpretation of the statutory phrase "officially ordered or approved"—under which the nurses would be paid at overtime rates for hours of work they were induced but not expressly authorized to perform—was inconsistent with the statute's plain meaning. Lesko, 161 F.4th at 1361–62 ("There is no statutory right to induced overtime, only officially ordered or approved overtime that is properly authorized."). The court observed that "[t]he ordinary meaning of 'order' is to command or direct, while the ordinary meaning of 'approve' is to confirm or ratify." Id. at 1358 (footnotes omitted). "Both terms," the court of appeals explained, "connote that someone with authority gives the order or approval." Id. at 1358–59. Further, the word "'[o]fficially' means having proper authorization, which includes both the person providing authorization and the necessary formality (i.e., the form) needed for authorization." Id. at 1359 (footnote omitted).

For these reasons, the Federal Circuit concluded, the plain meaning of the phrase "officially ordered or approved" "presupposes a process for authorizing overtime with sufficient formalities," although it "provides no guidance as to the mechanics of that process (i.e., who can authorize overtime and how they can do it (oral, written, or both))." Id. Therefore, "the best interpretation of [FEPA] is that Congress mandated an authorization process for directing or ratifying overtime but did not determine the requisite formalities in the statutory text." Id.

Because the VA overtime statute, 38 U.S.C. § 7453(e)(1), employs the same "officially ordered or approved" language as FEPA, both should be afforded the same meaning. Mercier, 786 F.3d at 982. The Court concludes, therefore, that just as was the case with respect to 5 U.S.C. § 5542(a), the plain meaning of the phrase "officially ordered or approved" in 38 U.S.C. § 7453(e)(1) "presupposes a process for authorizing overtime with sufficient formalities" but is silent as to what those formalities are. Lesko, 161 F.4th at 1359.

Having determined the plain meaning, the Lesko court then noted that Congress delegated to the Office of Personnel Management ("OPM") the authority to "prescribe regulations, subject to the approval of the President, necessary for the administration of this subchapter." Id. (quoting 5 U.S.C. § 5548(a)). The court of appeals concluded that Congress' decision to not itself prescribe the formalities needed to authorize overtime pay, coupled with its delegation of authority to OPM, "clear[ed] the path for OPM to fill up the details of the authorization process" through regulation. Id. at 1360. And OPM did so by promulgating a rule stating "[o]vertime work in excess of any included in a regularly scheduled administrative workweek may be ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated." 5 C.F.R. § 550.111(c).

Similar reasoning applies here. Congress has delegated to the VA the discretionary authority to fill up the details by which overtime pay may be officially ordered or approved. With respect to PAs, 38 U.S.C. § 7454, which creates their entitlement to overtime pay "on the same basis as provided for nurses," authorizes the VA Secretary to "prescribe by regulation standards for compensation and payments under this section." For APRNs, 38 U.S.C. § 7421(a) authorizes the VA to develop rules governing overtime eligibility, stating that "[n]otwithstanding any law, Executive order, or regulation, the Secretary [of the VA] shall prescribe by regulation the hours and conditions of employment . . . of employees appointed under any provision of this title in positions in the Veterans Health Administration."

Rules that specify the formalities required to establish an employee's entitlement to overtime pay regulate employee "hours." They also prescribe "conditions of employment" as that phrase is defined in federal sector labor law. See 5 U.S.C. § 7103(a)(14) (defining "conditions of employment" with exceptions not relevant here, as "personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions"); see also Fort Stewart Schs. v. Fed. Lab. Rels. Auth., 495 U.S. 641, 644 (1990) (holding that wages are "conditions of employment" under 5 U.S.C. § 7103(a)(14) and so are subject to bargaining); James v. Von Zemenszky, 284 F.3d 1310, 1317 (Fed. Cir. 2002) (finding the authority to prescribe "conditions of employment" for VA employees under § 7421(a) covers "matters such as work assignments and scheduling").

In their supplemental brief, Plaintiffs attempt to distinguish Congress' delegation of rulemaking authority to OPM under Title 5 from its delegation of authority to the VA in Title 38 to set standards for compensation and prescribe conditions of employment. The distinctions they identify are not material ones.

For example, Plaintiffs observe that "even if Congress delegated to the [VA] the same authority it delegated to OPM [under Title 5]," the VA did not exercise that authority until 2017—26 years after Congress added the overtime provisions to Title 38—whereas OPM promulgated its regulation just four days after Congress enacted FEPA. Pls.' Supp. Br. at 2. By that time, Plaintiffs note, the Federal Circuit had already issued its decision in Mercier interpreting the "officially ordered or approved" language of 38 U.S.C. § 7453(e) "to include overtime that 'is induced by one with the authority to order or approve overtime but not expressly directed.'" Id. (quoting Mercier, 786 F.3d at 982). According to Plaintiffs, "even after Lesko," Mercier "remains the law" because "[p]ost-Chevron, agencies lack authority to overrule federal courts of appeals through regulation." Id. (footnote omitted).

6

This argument is based on a flawed premise. In ruling for the government, the Court does not recognize a right on the VA's part to overrule by regulation the court of appeals' decision in Mercier. Rather, the Court follows the interpretation of the "officially ordered or approved" language that the en banc court of appeals endorsed in Lesko. That interpretation rejects the notion that overtime is "officially ordered or approved" where it is induced but not expressly directed. As noted, Lesko held that "[t]here is no statutory right to induced overtime, only officially ordered or approved overtime that is properly authorized." Lesko, 161 F.4th at 1361–62. And, as an en banc decision of the Federal Circuit, to the extent there is a conflict between Lesko's holding and Mercier's, the decision in Lesko controls.

Moreover, at the time of the events giving rise to the plaintiffs' claims in Mercier, there was no regulatory guidance from the VA regarding how overtime would be ordered or approved. The Federal Circuit explicitly noted this lack of regulatory guidance when it considered whether to follow decades-old judicial precedent that held employees were entitled to be paid at overtime rates under an inducement theory. See Mercier, 786 F.3d at 972 n.1, 981–82.

It is by no means clear that the Federal Circuit would have still found the plaintiffs could establish entitlement to overtime pay based on an inducement theory in Mercier had there been such regulatory guidance at the time of the events that gave rise to that case. To the contrary, in Doe v. United States, which was decided some eleven years before Mercier, the court rejected the plaintiffs' reliance on an inducement theory because of the existence of the OPM regulation enforced in Lesko, which requires that overtime be approved in advance in writing. 372 F.3d 1347, 1352, 1358–62 (Fed. Cir. 2004) (citing 5 C.F.R. § 550.111(c)).

There is similarly no merit to Plaintiffs' argument that "[c]onstruing the VA Handbook to eliminate induced overtime from compensable work exceeds any reasonable construction of the VA's delegated authority to prescribe 'standards for compensation and payment,' which must operate within, not contrary to, the statute's substantive protections." Pls.' Supp. Br. at 7. This argument is again premised on the notion the section 7453(e)(1)'s "substantive protections" include a right to compensation for induced overtime, see id., a premise the en banc Lesko court explicitly rejects, at least where there exist standards for approving overtime that have been established by an agency with delegated authority to do so, Lesko, 161 F.4th at 1361–62.

Finally, the Court rejects Plaintiffs' arguments that the revisions to the Handbook do not reflect "reasoned decision making within the boundaries of its delegated authority" as the Lesko court required. Lesko, 161 F.4th at 1358 (quoting Loper Bright, 603 U.S. at 395). Both the Handbook and the OPM regulation provide that entitlement to overtime pay must be based on express advanced approval. The primary difference between the Handbook's overtime requirements and OPM's regulation is in the form the approval must take. The Handbook, unlike the OPM regulation, permits authorized VA officials to approve overtime verbally as well as in writing. Pls.' Supp. Br. at 4.

Plaintiffs argue that, because of this distinction, the revisions, unlike OPM's regulations, do not "create[] clarity for both the Government and the employees regarding when overtime will be compensated," do not "reduce[] the likelihood of overtime disputes," and do not "create[] evidence substantiating that the hours worked were actually hours required by the Government." See id. (quoting Lesko, 161 F.4th at 1361).

These arguments are unavailing. To be sure, giving authorized VA officials the authority to approve overtime verbally may mean that there will be more disputes about whether such authorization was actually provided than would be the case if authorization could only be effected in writing. Nonetheless, that result does not persuade the Court that the Handbook does not reflect reasoned decision making.

In addition, as was true with respect to the OPM regulation, requiring express advanced approval of overtime work, whether in writing or verbally, enables employees to know ahead of time whether or not they will be entitled to receive compensation for their extra hours of work. It also enables the government to control its liability for overtime, by conditioning overtime pay entitlement on the advanced and express approval of an authorized official. See Doe, 372 F.3d at 1361 (observing that the writing requirement imposed by OPM regulations "serves an important purpose of the statute—to control the government's liability for overtime"—and citing legislative history reflecting FEPA's dual purpose of "ensuring that employees receive[] overtime compensation while adequately controlling the government's obligation to pay overtime so as not to subject the Treasury to unanticipated liabilities"). Certainly, the revisions to the Handbook provide greater clarity—and thus better serve these purposes—than the standard Plaintiffs endorse, which contemplates implicit or constructive approval of overtime through an inducement theory and does not require any express authorization, whether verbally or in writing.

The Court has considered Plaintiffs' remaining arguments regarding the applicability of the overtime authorization process set forth in the revised Handbook and finds them without merit. The government is entitled to judgment as a matter of law with respect to claims for overtime worked after the revisions to the Handbook became effective on August 3, 2017.

## CONCLUSION

On the basis of the foregoing, the government's Renewed Motion for Summary Judgment, ECF No. 194, is **GRANTED**. The parties are directed to file a joint status report by Wednesday, July 1, 2026 proposing next steps in this case, including with respect to overtime claims based on work performed before the Handbook was revised on August 3, 2017. The parties shall also address whether the Court should enter judgment in accordance with RCFC 54 as to the overtime claims based on work performed after August 3, 2017.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge